# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

WELLS FARGO BANK, N.A.,

    Plaintiff,

vs.

THE SKY VISTA HOMEOWNERS ASSOCIATION et al.,

    Defendants.

3:15-cv-00390-RCJ-VPC

**ORDER**

This case arises out of a homeowners' association foreclosure sale. Pending before the Court is a motion for summary judgment.

**I.    FACTS AND PROCEDURAL HISTORY**

In 2004, Kehar Singh gave an unidentified lender a promissory note for $168,373 ("the Note") to purchase real property at 9658 Black Bear Drive, Reno, Nevada, 89506 ("the Property"), which was secured by a deed of trust ("the DOT") against the Property. (*See* Compl. ¶¶ 8, 13, ECF No. 1). The DOT was later assigned to Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo"). (*Id.* ¶ 14). Singh has defaulted with over $156,598.15 due on the Note, and Wells Fargo intends to foreclose the DOT against the Property. (*Id.* ¶¶ 15–17).

Defendant The Sky Vista Homeowners' Association ("the HOA") has completed its own foreclosure sale, however. (*See id.* ¶¶ 2, 18–29). The HOA caused Kern & Associates, Ltd. to

record a notice of delinquent assessment lien ("the NDAL") as to the Property in 2011 indicating that $1,088 was due, which amount included late charges, fees, fines, foreclosure fees, transfer fees, attorney's fees, costs, and other charges. (*Id.* ¶ 18). The HOA later caused Phil Frink & Associates, Inc. ("Frink") to record a notice of default and election to sell ("the NOD") indicating that $2,259.30 was due, without specifying what amount was due for assessment fees versus interest, fees, collection costs, etc., and without specifying the superpriority amount of the HOA's lien. (*Id.* ¶ 19). The HOA later caused Frink to record a notice of trustee's sale ("the NOS") scheduling a sale for May 10, 2012 and indicating that $3,886.84 was due, without specifying what amount was due for assessment fees versus interest, fees, collection costs, etc., and without specifying the superpriority amount of the HOA's lien. (*Id.* ¶ 20). In May 2012, the previous servicer, Bank of America, N.A., contacted Frink and demanded a payoff ledger identifying the superpriority amount of the HOA's lien, but Frink refused to provide any information, thereby rejecting the attempted tender of the superpriority amount before the HOA foreclosure sale. (*Id.* ¶¶ 26–27). On March 29, 2013, the HOA sold the Property to Defendant TBD, LLC for $4,367, less than 3% of the outstanding principal balance on the Note. (*Id.* ¶¶ 3, 28–29). Defendant TBR I, LLC purchased the Property from TBD on December 27, 2013. (*Id.* ¶ 4).

Wells Fargo (as Indenture Trustee for the Registered Holders of IMH Assets Corp., Collateralized Asset-Backed Bonds, Series 2004-11) sued the HOA, TBD, and TBR I in this Court for: (1) quiet title; (2) violation of Nevada Revised Statutes section ("NRS") 116.1113; and (3) common law wrongful foreclosure. Wells Fargo asks the Court in the alternative to set aside the HOA foreclosure sale, declare that the HOA foreclosure sale did not extinguish the DOT, or award damages resulting from the extinguishment of the DOT in violation of law.

The HOA moved to dismiss based on Wells Fargo's failure to abide by state law pre-litigation exhaustion requirements. The Court denied the motion because non-exhaustion is an affirmative defense, and facts indicating non-exhaustion did not appear on the face of the Complaint. TBD and TDR I answered and counterclaimed for quiet title. (*See* Answer and Countercl., ECF No. 14). The HOA separately answered without pleading any counterclaims. (*See* Answer, ECF No. 20). TBD and TBR I later asked the Court to dismiss the quiet title claim against them and to substitute TBR I's grantee Airmotive Investments, LLC ("Airmotive") as a Defendant under Rule 25(c). The Court granted the motion. Wells Fargo has now moved for offensive summary judgment.

## II.  SUMMARY JUDGMENT STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or

defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.

If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

Notably, facts are only viewed in the light most favorable to the nonmoving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). That is, even where the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

### III. ANALYSIS

Plaintiff seeks summary judgment on its quiet title claim on the bases that Chapter 116's notice scheme is facially unconstitutional, *see Bourne Valley Court Tr. v. Wells Fargo Bank, N.A.*, 832 F.3d 1154, 1156 (9th Cir. 2016), that it tendered the superpriority amount of the HOA's lien prior to sale such that the DOT survived the sale, *see US Bank, N.A. v. SFR Invs. Pool I, LLC*, No. 3:15-cv-241, 2016 WL 4473427 (D. Nev. Aug. 24, 2016) (Jones, J.), that the sale was commercially unreasonable, and that the SFR decision should not be applied retroactively.

#### A. The HOA

The HOA opposes the motion as to the wrongful foreclosure claim and the claim under NRS 116.1113, the only two claims directed against the HOA. The HOA also notes that if Wells Fargo is successful on its quiet title claim against Airmotive, it will have no claim for damages against the HOA for wrongful foreclosure or under NRS 116.1113.

The Court finds that if Wells Fargo were to lose on the quiet title claim, it would be entitled to summary judgment on the wrongful foreclosure claim but not on the NRS 116.1113 claim, because Wells Fargo has not addressed that claim in its motion. As the Court has ruled in other cases, tender of the superpriority piece of an HOA lien (whether accepted or rejected) extinguishes that portion of the lien such that a resulting HOA foreclosure does not extinguish a

first deed of trust. *See US Bank, N.A.*, 2016 WL 4473427, at *6–8. Here, the evidence does not show actual payment of the superpriority piece but a refusal of the HOA's agent to identify to the first deed of trust holder's agent the amount of the superpriority piece upon the latter's request and instead demanding payment of the full lien, including the much greater subpriority piece that is subordinate to the DOT. (*See* Kern Letter, May 8, 2012, ECF No. 45-4). That set of circumstances is sufficient to eliminate any genuine issue of material fact as to whether tender was properly made. Tender is not payment itself but an unconditional offer of payment. *See US Bank, N.A. v. Bacara Ridge Ass'n*, No. 2:15-cv-542, 2016 WL 5334655 at *3 (D. Nev. Sept. 22, 2016) (quoting Black's Law Dictionary 1696 (10th ed. 2014)). The implication of a demand of payment of the full lien is that payment of the superpriority piece alone would be rejected, which both parties knew was the case based on industry practice, as this Court and others have noted in other cases. *See, e.g.*, *US Bank, N.A.*, 2016 WL 4473427, at *4.

Here, the first deed of trust holder's offer to pay the superpriority piece was sufficient to constitute tender as a matter of law, (*see* Jung Letter, May 15, 2012, ECF No. 45-2 (offering to pay the maximum amount of the superpriority piece allowed by law—nine months of back HOA dues—once the HOA identified the amount)). Although the foreclosure as against Singh was not wrongful (because no party ever tendered the subpriority piece of the HOA's lien), the foreclosure as against the DOT holder was.

In reply, Wells Fargo agrees that it seeks damages against the HOA only if the Court rules that Wells Fargo's deed of trust was extinguished by the HOA sale. Because the Court rules that the deed of trust survived the sale, *see infra*, the Court will dismiss the claims against the HOA without prejudice.

///

**B. Airmotive**

**1. *Stone Hollow***

Airmotive argues in opposition that the unpublished Nevada Supreme Court case that had previously held that a rejected tender was sufficient to extinguish the superpriority piece of an HOA lien, *see Stone Hollow Avenue Tr. v. Bank of Am., N.A.*, No. 64955, 2016 WL 4543202 (Nev. Aug. 11, 2016), has been vacated and remanded upon en banc reconsideration, *see Stone Hollow Avenue Tr. v. Bank of Am., N.A.*, No. 64955, (Nev. Dec. 21, 2016). But the Nevada Supreme Court did not rule that a wrongfully rejected tender did not extinguish a corresponding lien. *See id.* Rather, it found that the district court had erred in determining whether there remained a genuine issue of material fact on the issue of wrongful rejection of the tender in that case. *See id.* Had the Court believed that a wrongfully rejected tender necessarily did not extinguish a corresponding lien, it would not have vacated and remanded for further fact-finding on that issue but simply reversed with instructions. The remand necessarily implied the Nevada Supreme Court's position that a wrongfully rejected tender extinguishes a corresponding superpriority piece of an HOA lien. Even ignoring the entire *Stone Hollow* case, as Airmotive suggests, the heavy weight of authority as cited by this Court in previous cases, *see, e.g.*, *US Bank, N.A.*, 2016 WL 4473427, at *6–8, indicates that a wrongfully rejected tender is effective to immediately extinguish a corresponding lien.

**2. The Return Doctrine**

Airmotive next argues that *Bourne Valley Court Tr. v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016), which held that Chapter 116's opt-in notice scheme was facially unconstitutional under the Due Process Clause of the Fourteenth Amendment, does not require summary judgment in favor of Wells Fargo's quiet title claim. Airmotive argues that the opt-in

version of Chapter 116's notice scheme ruled unconstitutional in *Bourne Valley* was adopted in 1993, but that the 1991 version of Chapter 116 required constitutionally sufficient notice. *See* Nev. Rev. Stat. § 116.31168 (1991) ("The association must also give reasonable notice of its intent to foreclose to all holders of liens in the unit who are known to it."). Airmotive argues that under the return doctrine, under which an unconstitutional statute reverts to its latest constitutional version, *see, e.g.*, *We the People Nev. ex rel. Angle v. Miller*, 192 P.3d 1166, 1176 (Nev. 2008), the Court should compare the constitutionality of the HOA's sale in this case against the 1991 version of Chapter 116.

The return doctrine functions to reestablish a previous version of a statute for future application where a later version is struck down as unconstitutional; the theory is that because the Legislature did not have the power to enact the unconstitutional version of the statute, the previous version was never properly abrogated, and the previous version therefore remains in force going forward. *See, e.g.*, *id.* The doctrine does not (and could not) function to forgive constitutional offenses committed under the amended version of the statute in the meantime. Airmotive need not rely on the return doctrine, however, because it adduces evidence that the HOA gave the first deed of trust holder actual notice of the HOA sale. If that is true, the argument under the return doctrine is unnecessary. Regardless of *Bourne Valley*, actual notice obviates the unconstitutionality of the opt-in statute. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010) (Espinosa's failure to serve United with a summons and complaint deprived United of a right granted by a procedural rule [under which United did not object]. . . . But this deprivation did not amount to a violation of United's constitutional right to due process. . . . Here, United received actual notice . . . . This more than satisfied United's due process rights."). A first deed of trust holder only has a constitutional grievance if he in fact did

not receive reasonable notice of the sale at which his property rights was extinguished. Here, Airmotive has adduced sufficient evidence that the first deed of trust holder had actual notice of the HOA sale to avoid summary judgment in favor of Wells Fargo on the issue. (*See* Jung Letter 1 ("This letter is in response to your Notice of Sale . . . .")). The Court finds that there is at least a genuine issue of material fact whether due process was complied with here, regardless of the return doctrine.

### 3. Tender of the Superpriority Piece and Bona Fide Purchaser Status

Airmotive argues that the Jung Letter was not a tender of the superpriority piece of the HOA's lien. As noted, *supra*, the Court disagrees and grants summary judgment against Airmotive for this reason and because no one in Airmotive's chain of title was a bona fide purchaser for value without notice ("BFP"). A BFP is a person who pays money for real property before obtaining notice of an interest in the property that would be senior to his own interest under the traditional rule that the first-obtained title is superior to any later-obtained title. The states have enacted recording statutes that to varying degrees protect those who pay for interests in real property before obtaining notice (whether actual, constructive, or inquiry) of another party's preexisting adverse interest in the property. Recording statutes are typically classified as "notice," "race," or "race–notice" statutes. Nevada has a race–notice statute. *See* Nev. Rev. Stat. § 111.325 ("Every conveyance of real property within this State hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same real property, or any portion thereof, where his or her own conveyance shall be first duly recorded."). In other words, a later-obtained interest can prevail over an earlier-obtained interest in Nevada where the later purchaser has no knowledge of the previous interest and records his interest first. It is not

genuinely disputed that neither of these elements is satisfied here.  TBD had constructive notice of the DOT at the time of the HOA sale because the DOT had been recorded, and the Foreclosure Deed was therefore of course not recorded before the DOT.

The question here turns on an interpretation of NRS 116.3116.  Because that statute as interpreted by the Nevada Supreme Court in 2014 permits the extinguishment of an earlier recorded interest by a later recorded interest, it in effect operates as an exception to the general recording statute, and BFP status under NRS 111.325 would appear to be inapposite.  The question here is whether a declaration of the continuing validity of the DOT would be inequitable as to Airmotive.  The Court finds that it would not be.  Even assuming the issue were whether Airmotive had notice at the time it acquired the Property not only of the fact of the existence of a deed of trust at the time of the HOA sale but also of the legal possibility that the deed of trust might have survived the HOA sale, there is no genuine issue of material fact that Airmotive was not an innocent purchaser in either regard.  The present lawsuit, in which Wells Fargo had already alleged the continuing vitality of the DOT for several reasons, was already ongoing, and other HOA sale purchasers had lost similar quiet title actions in this Court and others.  A reasonable purchaser in Airmotive's position therefore would have perceived a serious risk that the DOT might have survived the HOA sale.  This is further supported by the fact that the foreclosure deed taken by TBD explicitly disclaimed any warranties of title. (*See* Foreclosure Deed, ECF No. 43-7).  One who takes such a title does not qualify as a BFP, because a grantor's refusal to issue standard warranties of title puts a reasonable and prudent person on inquiry notice of any competing interests. *See* 11 David A. Thomas, *Thompson on Real Property* § 92.09(c)(3)(C), at 191 (2008).

///

The Court need not reach the issues of commercial unreasonableness or retroactivity of *SFR Investments Pool 1, LLC v. U.S. Bank, N.A.*, 334 P.3d 408 (Nev. 2014).

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 43) is GRANTED IN PART.

IT IS FURTHER ORDERED that the claims against The Sky Vista Homeowners' Association are DISMISSED, without prejudice.

IT IS FURTHER ORDERED that Plaintiff shall SUBMIT a proposed form of judgment within fourteen (14) days.

IT IS SO ORDERED.

DATED: This 13th day of April, 2017.

_____
ROBERT C. JONES
United States District Judge